ACCEPTED
01-14-00536-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/9/2015 2:38:22 PM
CHRISTOPHER PRIN
CLERK

## NO. 01-14-00536-CR

## IN THE COURT OF APPEALS
## FOR THE FIRST JUDICIAL DISTRICT OF TEXAS
## AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/9/2015 2:38:22 PM
CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **DENNIS ROY REDDING** | § | **APPELLANT** |
| | § | |
| **VS.** | § | |
| | § | |
| **THE STATE OF TEXAS** | § | **APPELLEE** |

## APPEAL FROM CAUSE NO. 12CR2363
## IN THE 212TH DISTRICT COURT
## OF GALVESTON COUNTY, TEXAS

## APPELLANT'S BRIEF

**SCHNEIDER & MCKINNEY, P.C.**

**STANLEY G. SCHNEIDER**
**Texas Bar No. 17790500**
**440 Louisiana, Suite 800**
**Houston, Texas 77002**
**(713) 951-9994 (Office)**
**(713) 224-6008 (Fax)**
**stans3112@aol.com (Email)**

**ATTORNEY FOR APPELLANT**

**APPELLANT REQUESTS ORAL ARGUMENT**

## Identity of Parties and Counsel

The following is a complete list of all parties to the trial court's judgment, and the names and addresses of all trial and appellate counsel:

Dennis Roy Redding ................................................................................ Appellant

State of Texas .......................................................................................... Appellee

Stanley G. Schneider ..................................... Appellant's Retained Counsel at Trial
440 Louisiana, Suite 800
Houston, Texas 77002

Casey Gotro . .................................................. Appellant's Retained Counsel at Trial
440 Louisiana, Suite 800
Houston, Texas 77002

Jennifer Ott............................................... Assistant District Attorney at Trial
600 59th Street, Suite 1001
Galveston, Texas 77551

William D. Reed . ............................................... Assistant District Attorney at Trial
600 59th Street, Suite 1001
Galveston, Texas 77551

Stanley G. Schneider ................................ Appellant's Retained Counsel on Appeal
440 Louisiana, Suite 800
Houston, Texas 77002

Rebecca Klaren . ........................................... Assistant District Attorney on Appeal
600 59th Street, Suite 1001
Galveston, Texas 77551

Hon. Bret Griffin ................................................................................... Trial Judge

# Contents

*Page*

Identity of Parties and Counsel. ................................................................................ ii

Table of Contents. ..................................................................................................... iii

List of Authorities. .................................................................................................... iv

Statement of the Case. ................................................................................................ 1

Issues Presented. ........................................................................................................ 1

> Issue One:  The trial court erred in submitting a voluntary intoxication instruction pursuant to section 8.04 (a) of the Penal Code in the absence of evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions.
>
> Issue Two:  The trial court erred in refusing to provide an instruction guiding the jury in the proper application of the section 8.04 (a) of the Penal Code.
>
> Issue Three:  The trial court erred in overruling Appellant's objections to the State's closing argument at guilt-innocence which misstated the scienter element as applying to the nature of the conduct rather than the result.

Summary of the Arguments. ........................................................................................ 2

Facts. .......................................................................................................................... 3

Arguments and Authorities. ...................................................................................... 13

   Issues One and Two:  Jury Charge Error. ........................................................... 13

      A.      Facts. ...................................................................................................... 13

  B.  Standard of Review. .............................................................. 14

  C.  The voluntary intoxication charge was error
     because it was not warranted by the evidence. ................................. 14

  D.  The unwarranted instruction caused some degree of harm. ............... 21

  E.  The trial court erred in failing to submit the requested
     instruction explaining the application of section 8.04 (a). ............... 25

  F.  The failure to submit an explanatory application instruction
     caused some degree of harm. ................................................................. 33

 Issue Three: Jury Argument. ............................................................... 36

  A.  Facts. ...................................................................................... 36

  B.  Standard of Review. ................................................................. 37

  C.  The argument was improper because it misstated the law. ................ 38

  D.  The improper argument affected Appellant's substantial rights. ....... 41

Prayer. ......................................................................................................... 46

Certificate of Service. .................................................................................. 47

Certificate of Compliance. ........................................................................... 48

# List of Authorities

**Cases**      **Page**

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1984)........................... passim

*Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009).................................... 14

*Bartlett v. State*, 270 S.W.3d 147 (Tex. Crim. App. 2008).................................... 20

*Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003). .................................... 20

*Burd v. State*, 404 S.W.3d 64 (Tex. App.–Houston [1st Dist.] 2013, no pet.)........ 35

*Burke v. State*, 652 S.W.2d 788 (Tex. Crim. App. 1983). ........................... 38, 40, 45

*Cf. Rudd v. State*, 921 S.W.2d 370 (Tex. App.-Texarkana 1996, pet. ref'd)........... 42

*Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994). ....................................... 39

*Dana v. State*, 420 S.W.3d 158 (Tex. App.– Beaumont 2012, pet. ref'd). ............. 18

*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010)................................... 15, 27

*Davis v. State*, 329 S.W.3d 798 (Tex. Crim. App. 2010) ...................................... 37

*Delgado v. State*, 235 S.W.3d 244 (Tex. Crim. App. 2007)................................... 26

*Dickson v. State*, 642 S.W.2d 185 (Tex. App. – Houston [14th Dist.] 1982, pet. ref'd). ................................................................................................................ 44

*Druery v. State*, 225 S.W.3d 491 (Tex. Crim. App. 2007). ....................... 14, 21, 33

*Eckert v. State*, 672 S.W.2d 600 (Tex. App. –Austin 1984, pet. ref'd). ................. 40

*Ex parte Chandler*, 719 S.W.2d 602 (Tex. Crim. App. 1986)........................... 26, 32

*Fisher v. State,*
    397 S.W.3d 740 (Tex. App. – Houston [14th Dist.] 2013, no pet.). .............. 18

*Garza v. State*, 829 S.W.2d 291 (Tex. App. – Dallas 1992, pet. ref'd). ................ 18

*Gray v. State*, 152 S.W.3d 125 (Tex. Crim. App. 2004). ....................................... 26

*Holmes v. State*, 962 S.W.2d 663 (Tex. App. – Waco 1998, pet. ref'd, untimely filed). ........................................................................................................ 42

*Hutch v. State*, 922 S.W.2d 166 (Tex. Crim. App. 1996). ......................... 15, 25, 31

*Johnson v. State*, 604 S.W.2d 128 (Tex. Crim. App. 1980). .................................. 44

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998). .................................. 41

*King v. State*, 953 S.W.2d 266 (Tex. Crim. App. 1997). ....................................... 41

*Lee v. State,*
    971 S.W.2d 130 (Tex. App.- Houston [14th Dist.] 1998, pet. ref'd). .......... 45

*Lewis v. State*, 529 S.W.2d 550 (Tex. Crim. App. 1975). ...................................... 44

*Long v. State*, 823 S.W.2d 259 (Tex. Crim. App. 1991). ....................................... 38

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). ...................................... 26

*Martinez v. State*, 17 S.W.3d 677 (Tex. Crim. App. 2000). ................................... 41

*Mauldin v. State*, 628 S.W.2d 793 (Tex. Crim. App. 1982). .................................. 41

*McQueen v. State*, 781 S.W.2d 600 (Tex. Crim. App. 1989). ................................ 38

*Medford v. State*, 13 S.W.3d 769 (Tex. Crim. App. 2000). ................................... 30

*Mendoza v. State,* 349 S.W.3d 273 (Tex. App. – Dallas 2011, pet. ref'd)........ 25, 35

*Middleton v. State*, 125 S.W.3d 450 (Tex. Crim. App. 2003). ............................... 30

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998). ............................. 42, 46

*Peak v. State*, 57 S.W.3d 14 (Tex. App. – Houston [14th Dist.] 2001, no pet.). .... 46

*Plata v. State*, 926 S.W.2d 300 (Tex. Crim. App. 1996). ...................................... 26

*Raby v. State*, 970 S.W.2d 1 (Tex. Crim. App. 1998)............................................. 27

*Ramos v. State*, 547 S.W.2d 33 (Tex. Crim. App. 1977).........................................27

*Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013)....................................... 33

*Rodriguez v. State*,
    --- S.W.3d ----, 2014 WL 7205226 (Tex. App. – Houston [1st Dist.] 2014,
    no pet.) (No. 01-12-00688-CR). ...................................................... 24

*Rogers v. State*, 105 S.W.3d 630 (Tex. Crim. App. 2003)..................................... 22

*Ruiz v. State*,
    766 S.W.2d 324 (Tex. App. – Houston [14th Dist.] 1989, no pet.)........ 30, 32

*Sakil v. State*, 281 S.W.3d 87 (Tex. App. – El Paso 2008)................................... 29

*Sakil v. State*, 287 S.W.3d 23 (Tex. Crim. App. 2009)......................... 14, 17, 27-28

*Schroeder v. State*, 123 S.W. 3d 398 (Tex. Crim. App. 2003). ............................ 39

*Scott v. State*, 2009 WL 416513 at *8 (Tex. App. – Austin 2009, no pet.). ........... 31

*Taylor v. State*, 885 S.W.2d 154 (Tex. Crim. App. 1994). ......................... 15-16, 19

*Thomas v. State*,
    336 S.W.3d 703 (Tex. App. – Houston [1st Dist.] 2010, pet. ref'd). ........... 38

*Thompson v. State*, 89 S.W.3d 843 (Tex. App. – Houston [1st Dist.] 2002, pet.
ref'd). ........................................................................................................

*Todd v. State*, 598 S.W.2d 286 (Tex. Crim. App. 1980)......................................... 38

*Vasquez v. State*, 389 S.W.3d 361 (Tex. Crim. App. 2012)..................................... 26

*Vernon v. State*, 841 S.W.2d 407 (Tex. Crim. App. 1992). ..................................... 30

*Walters v. State*, 247 S.W.3d 204 (Tex. Crim. App. 2008). ..................................... 14

*Webb v. State*,
        36 S.W.3d 164 (Tex. App. – Houston [14th Dist.] 2000, pet. ref'd)............ 41

*Whiting v. State*, 797 S.W.2d 45 (Tex. Crim. App. 1990). ..................................... 38

*Williams v. State*, 547 S.W.2d 18 (Tex. Crim. App. 1977).............................. 15, 25

*Williams v. State*, 630 S.W.2d 640 (Tex. Crim. App. 1982).................................. 22

*Yzaguirre v. State*, 394 S.W.3d 526 (Tex. Crim. App. 2013). ........................... 26, 31

**Statutes, Codes and Constitutional Provisions:**

TEX. R. APP. P. 44.2(b)................................................................................................ 41

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). .................................... 14, 26

TEX. PENAL CODE § 6.01................................................................................................

TEX. PENAL CODE § 6.01 (a). ................................................................................... 22

TEX. PENAL CODE § 6.02 (b). ................................................................................... 22

TEX. PENAL CODE § 6.03 (a) (Vernon 1994). ......................................................... 40

TEX. PENAL CODE § 6.03 (b) (Vernon 1994)........................................................... 40

TEX. PENAL CODE § 6.03 (c) (Vernon 1994). ......................................................... 40

TEX. PENAL CODE ANN. § 6.03 (West 2011). ......................................................... 38

TEX. PENAL CODE § 8.04. ......................................................................................... 13

TEX. PENAL CODE ANN. § 8.04 (a). ...................................................................... passim

TEX. PENAL CODE ANN. § 8.04 (a) (West 2011)........................................ 13, 15, 27

TEX. PENAL CODE ANN. § 8.04 (b). ................................................................ 15

TEX. PENAL CODE ANN. § 8.04 (c). ................................................................ 15

TEX. PENAL CODE ANN. § 8.04 (d) (West 2011). .............................................. 13, 15

TEX. PENAL CODE ANN. § 19.02 (b)(1), (2) (Vernon 2003). .................................. 39

TEX. PENAL CODE ANN. § 19.04. ...................................................................... 39

TEX. PENAL CODE art. 39 (Vernon's 1925). ...................................................... 22

TEX. PENAL CODE § 46.035. .......................................................................... 24

**Other Authorities**

Comm. on Pattern Jury Charges, State Bar of Tex., Texas Criminal Pattern Jury
Charges: Defenses § B6.3 (2013). ................................................................ 28-29

**To the Honorable Justices of the Court of Appeals:**

## Statement of the Case

Appellant Dennis Roy Redding was charged by indictment in cause number 12CR2363 with the first degree felony offense of murder, alleged to have occurred on June 23, 2012. CR6. Appellant entered a plea of not guilty and a jury found him guilty of the lesser-included offense of manslaughter. CR73. The jury assessed punishment at 7 years imprisonment. CR138. Appellant filed a motion for new trial, which was overruled by operation of law. CR157. Appellant filed timely written notice of appeal. CR144.

## Issues Presented

**Issue One:** The trial court erred in submitting a voluntary intoxication instruction pursuant to section 8.04 (a) of the Penal Code in the absence of evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions.

**Issue Two:** The trial court erred in refusing to provide an instruction guiding the jury in the proper application of the section 8.04 (a) of the Penal Code.

**Issue Three:** The trial court erred in overruling Appellant's objections to the State's closing argument at guilt-innocence which misstated the scienter element as applying to the nature of the conduct rather than the result.

1

## Summary of the Arguments

Issue One: The submission of a voluntary intoxication instruction pursuant to section 8.04 (a) of the Texas Penal Code was error because there was no evidence that Appellant's intoxication was a causal factor in or an excuse for his conduct. The erroneous instruction caused some degree of harm, requiring reversal, because it drew the jury's attention to a particular piece of evidence and conveyed an opinion regarding the validity of Appellant's defense that the shooting was accidental.

Issue Two: The trial court erred in failing to submit the requested instruction explaining the application of section 8.04 (a). Merely instructing the jury that voluntary intoxication is "not a defense" is insufficient to guide the jury in the proper application of the abstract law to the facts. Section 8.04 (a) has acquired an established legal meaning in that evidence of voluntary intoxication may not serve to negate the culpable mental state of a crime but such evidence does not relieve the State of its burden of proving each element beyond a reasonable doubt. The error caused some degree of harm because the term "defense" is subjection to misinterpretation if given a broad meaning used in common parlance. The jury could have concluded that any conduct engaged in while intoxicated was legally

2

indefensible, regardless of whether the defendant had the requisite mental state. Accordingly, reversal is required.

Issue Three: The trial court erred in overruling objections to the State's closing arguments misstating the applicable law at the guilt-innocence phase. The State repeatedly argued that its burden was to prove intentional acts, when the jury charge required the jury to find that Appellant intended the result of his conduct. The improper argument affected Appellant's substantial rights because it was repeated with no curative instructions, it undermined Appellant's defense that he did not have the requisite intent for murder or manslaughter, and the evidence of guilt was not overwhelming. Accordingly, reversal is required.

**Facts**

On June 23, 2012, Appellant shot and killed his best friend of 25 years, Mark Holcomb. The issue at trial was whether the shooting was an accident.

Holcomb, 61, was a husband, father, grandfather, and an oral surgeon with a practice in Clear Lake. 3RR20-21. Holcomb met Appellant when their daughters became friends as children. 3RR22. Appellant, formerly a Houston Police Officer, was chief of security at NASA when they met. 3RR29. The two families became very close. 7RR14. Appellant's wife Joan Redding worked in Holcomb's office for many years and the couples joked that Joan was Holcomb's "office wife." 3RR22,

3

82. The Holcomb children stayed with the Reddings when their parents traveled. 7RR13. Holcomb and Appellant shared an interest in hunting and fishing, and the two couples took many vacations together. 3RR27. Holcomb and Appellant briefly operated a tool rental business together. 3RR29-30. The two men remained best friends throughout the course of their relationship. 3RR30-31. During visits and vacations, Holcomb and Appellant often drank heavily and engaged in horseplay. 3RR81.

On Friday, June 22, 2012, Mark and Francine Holcomb went to their weekend waterfront home in the gated community of Harborwalk in Hitchcock, Texas. 3RR31. They had invited Appellant and his son-in-law Darren Schieffer to stay at the house and go fishing on Saturday in Mark Holcomb's boat. 3RR32. Mark Holcomb met Appellant and Schieffer at the house around 3:00 p.m. and Francine arrived around 5:00 p.m. 3RR41. The men prepared for the fishing trip while Francine cooked dinner. 3RR42-43. Holcomb and Appellant began drinking mid-afternoon; Holcomb drank beer and gin/tonic while Appellant drank whiskey and coke. 3RR43, 160; 4RR13. Holcomb and Appellant spent a lot of time reminiscing about prior trips. 4RR77.

During the afternoon, the Holcomb's daughter Ashley arrived with her toddler daughter. 3RR44. Ashley's husband Jonathon Contois and his brother Dan

4

arrived during the evening. 3RR44. The family and guests ate dinner around 8:00 p.m. 3RR45. Appellant was intoxicated and refused to eat. 4RR21-22. After dinner everyone gathered in an outdoor kitchen area with seating and continued drinking and socializing. 8RR47. Appellant's son-in-law Schieffer was the only adult present who did not drink any alcohol. 3RR15, 19. Holcomb and Appellant remained as the rest of the group gradually dispersed to go to bed. 3RR48.

Around 9:30 p.m., three Harborwalk neighbors, Jeffrey Dolen, David Baggs, and Gert Rohdes, stopped by and joined Holcomb and Appellant, and Francine came back downstairs to visit with the neighbors. 3RR49. Appellant became very intoxicated and made comments about how close he and Holcomb were. 3RR48. Appellant also commented that if anything happened to Holcomb he would take care of Francine, which was a long-standing joke or understanding between the two couples. 3RR50-51. Francine did not take any offense or feel threatened by the comment. 3RR51. The group socialized and drank until sometime after midnight when Baggs and Rohdes helped Holcomb and Appellant get upstairs to bed. 4RR182. Baggs testified that Appellant was clearly intoxicated but able to walk. 4RR183.

Jonathon Contois, who was sleeping on a sofa in a living room on the third floor, testified that he was awakened by a noisy group on the stairs laughing.

3RR131. He saw Holcomb, Appellant, Rohdes, and Baggs approaching a bedroom. 3RR132-133. Contois heard Appellant saying something to the effect of "Stop fucking babying me" and that he felt bad that they had to help him. 3RR141. As Rohdes and Baggs headed back downstairs, Holcomb stood in the doorway of the bedroom facing into the room. 3RR172. Contois heard Holcomb say, "Dennis, what are you doing?" 3RR134, 164. Baggs and Contois heard someone say, "Turn off the light," immediately followed by a gunshot. 3RR134, 164; 4RR186-187.

Appellant's son-in-law Darren Schieffer was the only eye-witness to the shooting. Schieffer candidly testified that he had a strained relationship with his father-in-law because of his drinking, and did not want to visit the Holcombs with Appellant because he knew they drank heavily (Schieffer had quit drinking several months earlier). 4RR19-20, 66. Schieffer was annoyed that the group was up late drinking and concerned that the drinking would interfere with the fishing trip planned for early the next morning. 4RR23. Schieffer testified that everyone else was intoxicated that evening but Appellant was the most intoxicated. 4RR23-24. Around 9:30 p.m. Schieffer showered and went to bed in the third-floor bedroom he was to share with Appellant. 4RR24-26. Schieffer was awakened when Appellant stumbled into the room. 4RR27-28. Schieffer heard Appellant say to Holcomb, who was standing in the doorway, "You motherfuckers are treating me

6

like a baby." 4RR27-28. Appellant picked up his bag and put it on his bed and rummaged through it. 4RR28. Holcomb turned on the light and asked Appellant what he was looking for. 4RR29. Appellant said, with an irritated tone, "Turn off the fucking light and go back to bed." 4RR30. Holcomb turned off the bedroom light and Schieffer saw, by the light coming from the hall, Appellant holding his handgun in his left hand and facing the doorway.[1] 4RR30-32. Schieffer saw Appellant walk towards Holcomb with the gun pointed at him while saying, "You motherfuckers are treating me like a baby." 4RR32-33. When Appellant got within about two feet of Holcomb the gun went off, and Schieffer saw a look of shock on Appellant's face. 4RR32-33, 101.

Immediately after the gunshot family members and guests converged on the scene. Jonathon Contois saw Holcomb holding his side and saying, "Call 911, he shot me"; "it was an accident"; and "he didn't mean to do it." 3RR136, 169. Schieffer initiated a 911 call then gave the telephone to Ashley Holcomb. 4RR35-42. Schieffer and Contois restrained Appellant and looked for the gun; Schieffer found the gun in Appellant's left pocket and retrieved it. 4RR35-42. When Francine arrived Holcomb was calmly lying on the floor and told her that it was an accident. 3RR55. Francine saw several men holding Appellant's hands behind his

---

1 Appellant had a concealed handgun license. Appellant was left-handed but Schieffer had seen Appellant shoot with both hands. 4RR32, 98.

7

back and punching him. 3RR95-96. Francine stated, "Stop, that's Mark's friend, stop." 4RR46. Jeffrey Dolen heard Appellant say, "Let me up. It was an accident. Let me up." 4RR234.

The gunshot wound would likely have been survivable if not for a significant delay in medical treatment. 5RR77, 84. The paramedics were dispatched at 12:57 a.m. but Holcomb did not arrive at the hospital until 2:15 a.m. 4RR13136, 170; 5RR48. The delay was caused by the remoteness of the location and the paramedics' lack of equipment needed to transport Holcomb down the stairs. 4RR143-144. Holcomb was alert and oriented when he arrived at the hospital and disclosed to the staff that the shooting was an accident. 5RR52, 55. Holcomb underwent surgery but died from blood loss at 5:22 a.m. 5RR23, 46-47.

The autopsy showed that the bullet entered the left side of Holcomb's low chest a few inches below the nipple and lodged under the skin on the right flank. 5RR14, 21. The left-to -right angle of the pathway indicated that the shooter did not directly face Holcomb or that Holcomb turned to the right at the time of the shot; the trajectory was not consistent with the shooter directly facing Holcomb with the gun in his left hand. 5RR43, 72. The bullet was a hollow point, which is designed to remain in the body and inflict more tissue damage. 5RR27.

The prosecution acknowledged that the investigation was grossly mishandled by the Hitchcock Police Department. 8RR17. Patrol Officer Pruitt and Sergeant Gonzalez arrived at the scene around 1:00 a.m. and found Appellant on the floor with his hands secured behind his back with a belt. 7RR73-76. Sergeant Bertolino arrived shortly thereafter and noted that everyone at the scene seemed intoxicated. 6RR63-67. Gonzalez told Bertolino to transport Appellant to the police station. 6RR67. Pruitt stayed by the bedroom to protect the crime scene until the detective arrived. 7RR81.

Gonzalez, as the primary officer, was responsible for identifying witnesses and taking statements, but he could not recall if he instructed the witnesses present not to leave the scene and not to discuss the shooting with each other. 7RR94, 126. Ultimately, of the eight adult witnesses present, the only names Gonzalez collected were Darren Schieffer and Francine Holcomb. 3RR147; 7RR126. Gonzalez testified that Mark Holcomb was alert but Gonzalez chose not to talk to him because family members were present and upset. 7RR118-119.

Gonzalez conducted only one interview on the night of the shooting, with Darren Schieffer, but the recording of the interview was lost or destroyed. 7RR79. Standard Hitchcock PD procedure required officers to remove the secure digital (SD) card from the in-car recorder and upload the contents onto the server at the

station at the end of a shift. 6RR82-83. Gonzalez testified that he copied the video onto a compact disk but could not recall what he did with it. 7RR101-103, 108, 115. Police records indicated that a copy of a video from Gonzalez's vehicle was submitted to the police property room by someone, but no one from the Hitchcock PD knew what became of it. 7RR100-103, 170-176.

Detective Pitre arrived at the scene around 1:40 a.m. to conduct a "scene assessment": secure the scene, gather evidence, and conduct interviews with witnesses. 6RR7-8, 41-42, 47. Despite being the department's sole detective, Pitre had no training in homicide or shooting investigations. 6RR41-42. Pitre found three Hitchcock PD officers on the scene and numerous people gathered on the second floor of the house. 6RR46. Pitre acknowledged that standard procedures required responding officers to immediately separate witnesses and to conduct interviews timely so that the witnesses' memories would not be contaminated. 6RR44-45.

Pitre took five photographs of the bedroom with tent markers showing the location of a gun holster and a shell casing, but took no measurements of the scene. 6RR14-15, 33-34; SX27-31. He then intended to begin the interview process but discovered that all the witnesses had left. 6RR15. Pitre acknowledged that it was his responsibility to obtain witness statements on the day of the incident. 6RR53.

10

Officer Pruitt testified that he put on gloves and retrieved the gun from the pocket of an unidentified witness, while Sergeant Gonzalez recalled Schieffer handing Pruitt the gun. 4RR47; 7RR80-81, 124. Detective Pitre could not recall if he requested fingerprint analysis of the gun. 6RR61.

None of the officers found or collected Holcomb's shirt. 7RR79, 110. The medical examiner testified that clothing can be analyzed for soot particles to determine the range of fire, but that Holcomb's shirt had been removed before he was admitted to the hospital. 5RR57-59.

At the station Sergeant Gonzalez instructed Bertolino to bag Appellant's hands for gunshot residue testing, after Appellant's hands had already been handcuffed together for some period of time. 6RR79. The bag was not applied securely and repeatedly fell off as Appellant sat with his hands cuffed behind him. SX35. Pitre swabbed Appellant's hands for gunshot residue and forwarded the kit to the DPS Crime Lab, but was later informed by the lab that testing could not be done because the kit used by Pitre was obsolete and no longer accepted. 6RR16-18. The Hitchcock PD did not have any of the new kits, despite having been notified two years prior of the change. 6RR18, 36. Pitre acknowledged that GSR and fingerprint testing are important because it might indicate which hand held the gun. 6RR36, 57-61.

11

Appellant was Mirandized and repeatedly stated that the shooting was an accident. 6RR80, 89-90; SX35. Appellant also repeatedly asked the police about Holcomb's welfare. SX35. Appellant stated in a telephone call to his wife that the accident happened when he was using the laser on the gun. SX35.

There was a significant delay in conducting interviews with witnesses. Francine and Ashley Holcomb were interviewed by police on June 28. 3RR110-111; 6RR23. Jeffrey Dolen was interviewed on July 5. 6RR25. David Baggs and Jonathon Contois were interviewed at the end of July. 3RR156-158; 6RR25-26. Gert Rohdes and Darren Schieffer were interviewed in August. 6RR26-27. Detective Pitre claimed that scheduling issues caused the delays. 6RR27. The delay allowed the witnesses to compare stories before providing a statements. For example, Schieffer testified that he heard some of the family and guests saying that it was an accident and told them, based on what he had seen, it was not an accident. 4RR53. Both Officer Pruitt and Sergeant Gonzalez testified that Francine initially told them the shooting was an accident, but Francine testified that she changed her mind after talking to Schieffer. 3RR56-57, 117-118; 7RR79-80, 120.

Schieffer spoke with Appellant several months after the shooting and Appellant told him that he did not mean to shoot Holcomb; he was just trying to point the gun's laser at Holcomb. 4RR54. Appellant told Schieffer that he thought

12

the laser was trigger-activated. 4RR54. The button for the laser was actually on the

grip just underneath the trigger guard. 4RR55.

## Arguments and Authorities

## Issues One and Two: Jury Charge Error

### A. Facts

The jury was instructed on voluntary intoxication at the request of the State.

8RR4. The instruction tracked the language of section 8.04 of the Penal Code:

> Voluntary intoxication does not constitute a defense to
> the commission of a crime. Intoxication means
> disturbance to mental or physical capacity resulting from
> the introduction of any substance into the body.

CR65; TEX. PENAL CODE ANN. 8.04 (a), (d) (West 2011). Appellant objected to

instruction on two grounds. First, the instruction was not warranted because there

was no evidence, nor argument, that the intoxication was not voluntary or that it

caused or excused the conduct. 8RR4-9. Second, the instruction omitted an

application paragraph explaining that evidence of voluntary intoxication did not

negate the State's burden of proving all the elements beyond a reasonable doubt.

8RR10. Appellant requested the following application paragraph:

> Evidence of the defendant's intoxication, if any, does not
> negate the elements of intent or knowledge or recklessly
> or the State's burden to prove the defendant's intent,
> knowledge or recklessness, as those terms has [sic] been
> defined, beyond a reasonable doubt.

13

8RR10. The trial court denied the objection and the requested instruction. 8RR9-10.

### B. Standard of Review

To review claims of jury charge error, an appellate court must first ask whether there was error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If there was error and if the appellant objected to the error at trial, "reversal is required if the error is 'calculated to injure the rights of [the] defendant,' " meaning that "there must be some harm to the accused from the error." *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 161 (Tex. Crim. App. 1984). "[A]ny harm, regardless of degree, is sufficient to require reversal." *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007).

### C. The voluntary intoxication charge was error because it was not warranted by the evidence.

Under Texas law, the trial court must provide the jury with "a written charge setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2008). The function of a

14

jury charge is not "merely to avoid misleading or confusing the jury," but "to lead

and to prevent confusion." *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App.

1996) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)).

Section 8.04 of the Penal Code provides in relevant part:

> (a) Voluntary intoxication does not constitute a defense
> to the commission of a crime.
> \*   \*   \*
> (d) For purposes of this section "intoxication" means
> disturbance of mental or physical capacity resulting from
> the introduction of any substance into the body.

TEX. PENAL CODE ANN. 8.04 (a), (d) (West 2011).[2] The provision has been

interpreted to mean that evidence of voluntary intoxication "will not excuse a

defendant's actions," *Taylor v. State*, 885 S.W.2d 154, 156 (Tex. Crim. App.

1994), or "rebut a defendant's mental culpability." *Davis v. State*, 313 S.W.3d 317,

329–30 (Tex. Crim. App. 2010). A defendant need not expressly rely upon

intoxication as a defense in order to implicate this provision. *Taylor* at 158. But the

instruction is appropriate only "if there is evidence from any source that might lead

a jury to conclude that the defendant's intoxication somehow excused his actions."

*Id.*

---

2 Subsections (b) and (c) address substance-induced temporary insanity as a mitigating factor during the punishment phase and as the subject of a jury charge. TEX. PENAL CODE ANN. § 8.04(b) & (c) (Vernon 2003). Subsections (b) and (c) are not at issue in this case.

In *Taylor*, the defendant, who suffered from paranoid schizophrenia, was convicted of murdering her four-year-old daughter after pleading not guilty by reason of insanity.[3] *Id.* at 155. The defendant asserted that the section 8.04 (a) instruction should not have been given because she had not claimed that her intoxication caused her insanity or otherwise excused her actions. *Id.* at 158. The evidence showed that the defendant smoked marihuana within a few hours of the offense, and that it caused her to feel and act differently and to lose control of her temper. *Id.* The defendant testified that as soon as she smoked the marihuana she "started feeling funny," began "laughing and crying at the same time," felt a "sudden flash of anger" toward her daughter, and told her that she was going to kill her. *Id.* Additionally, an expert testified that marihuana use by a schizophrenic could trigger a psychotic episode and that in his opinion defendant's marihuana use on the night of the offense "markedly" affected her control over her temper. *Id.* The Court rejected the argument that the defendant must assert intoxication as a defense:

> We do not believe that a defendant needs to rely upon intoxication as a defense in order to implicate this

---

3 The application of the voluntary intoxication statute is the same in cases involving an insanity defense. The Court of Criminal Appeals has held that, if a pre-existing mental condition does not "in and of itself" render the accused "legally insane," "then the recent use of intoxicants causing stimulation or aggravation of the pre-existing condition to the point of insanity cannot be relied upon as a defense to the commission of the crime itself." *Evilsizer v. State*, 487 S.W.2d 113, 116 (Tex. Crim. App. 1972).

16

provision. Rather, if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions, an instruction is appropriate. In the instant case, where the defendant was asserting a defense of insanity in excuse of her actions, but there was also evidence, albeit slight, that her actions could have been precipitated by her marihuana use, the Court of Appeals did not err in holding that the instruction was properly given.

*Id.* at 158. Notably, the Court did not hold that the instruction is permissible whenever there is evidence of intoxication; instead, the evidence must be such that a jury could infer that it excused the conduct. Because the evidence suggested not simply that the defendant was intoxicated but that the defendant's intoxication "precipitated" her actions, the instruction was warranted.

In *Sakil v. State*, 287 S.W.3d 23 (Tex. Crim. App. 2009), an assault case, the court found that an 8.04 (a) instruction was proper based on evidence from two sources. *Id.* at 25- 27. The complainant testified that the defendant was not intoxicated but also testified that he behaved oddly during the fight: he was restless, was not being "himself," and he believed that he was being followed. *Id.* Additionally, the defendant called a psychiatrist and elicited testimony specifically suggesting a causal relationship between his drug abuse history and strange behavior at the time of the offense. *Id.* In finding the instruction proper, the Court pointed out that the defendant "elicited from his own witness [testimony] relating

to Appellant's 'lengthy' history of drug abuse," and also "went so far as to suggest a link between the drug use and Appellant's symptoms on the date of the offense" *Id.* at 27.

In *Fisher v. State*, 397 S.W.3d 740 (Tex. App. –Houston [14th Dist.] 2013, no pet.), the defendant pleaded not guilty to assault by reason of insanity. *Id.* at 742. The court found that a section 8.04 (a) instruction was appropriate because the defense psychiatric expert testified that alcohol ingestion could have affected the defendant's bipolar disorder, and evidence from multiple sources showed that the defendant drank alcohol prior to the offense. *Id.* at 746-47. *See also Garza v. State*, 829 S.W.2d 291, 295-96 (Tex. App.-Dallas 1992, pet. ref'd) (voluntary intoxication instruction properly given in murder prosecution where defense expert testified that defendant's use of a prescription drug could cause violent behavior); *Dana v. State*, 420 S.W.3d 158, 166-68 (Tex. App.– Beaumont 2012, pet. ref'd) (instruction proper in aggravated assault case where defense was insanity; evidence showed that defendant was "real high up on something" and defense elicited expert testimony that methamphetamine use could exacerbate the defendant's underlying schizophrenic illness).

In each of these cases, there was affirmative evidence that intoxication could have triggered, precipitated, or contributed to the conduct at issue. Additionally,

18

this type of evidence linking intoxication to the conduct was elicited by the defense. While evidence warranting the instruction may come "from any source," *Taylor* at 158, when such evidence is elicited by the defense it is more likely to "lead a jury to conclude that the defendant's intoxication somehow excused his actions." *Id.* In the instant case, the defense never elicited any testimony or made any argument suggesting any link between Appellant's intoxication and his firing of the gun. In fact, there was no evidence from any source suggesting that intoxication precipitated the shooting. Numerous witnesses testified that Appellant and Holcomb characterized the shooting as an accident, but none of the witnesses gave testimony suggesting that the accident occurred because of Appellant's intoxication. In fact, Appellant's son-in-law Schieffer, who was familiar with Appellant's drinking habits and was the sole eye-witness to the shooting, testified unequivocally that it was not an accident (4RR53, 66). Schieffer also testified that Appellant's explanation – that he accidentally fired the weapon when he was attempting to activate the laser – was not credible in light of Appellant's experience with firearms (4RR32, 50-51, 98). Accordingly, the issue before the jury was whether Appellant meant to fire the weapon, and neither side elicited evidence suggesting that intoxication factored into this issue.

Because the evidence did not warrant the instruction, its inclusion constituted an improper comment on the weight of the evidence. A trial court improperly comments on the weight of evidence by singling out evidence in its general instructions to the jury. *Bartlett v. State*, 270 S.W.3d 147, 152 (Tex. Crim. App. 2008). A trial court's focus on particular evidence has the potential to "obliquely or indirectly convey some [judicial] opinion on the weight of the evidence by singling out that evidence and inviting the jury to pay particular attention to it." *Id*. In *Bartlett*, the trial court instructed the jurors at the conclusion of the guilt phase of Bartlett's trial for driving while intoxicated that they were permitted to consider the fact that he refused to submit to a breath test. *Id.* While the instruction used seemingly neutral language, it improperly singled out a particular piece of evidence for special attention. *Id.; see also Brown v. State*, 122 S.W.3d 794, 802 (Tex. Crim. App. 2003) (holding that instruction in original charge informing jury that "intent or knowledge may be inferred by acts done or words spoken" was comment on weight of evidence because it "focus[ed] the jury's attention on the type of evidence that may support a finding of criminal intent.").

Because there was no evidence suggesting a link between Appellant's intoxication and the shooting, the voluntary intoxication instruction improperly

conveyed a judicial opinion regarding the importance of the evidence of intoxication. Accordingly, the trial court erred in submitting the instruction.

**D.     The unwarranted instruction caused some degree of harm.**

Because Appellant preserved his complaint, the Court must reverse if the error resulted in any harm, regardless of degree. *Almanza*, 686 S.W.2d at 161, *Druery*, 225 S.W.3d at 504. To gauge harm, the court reviews (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* These factors require a finding of harm in this case.

Nothing in the jury charge served to neutralize the error. The voluntary intoxication instruction was the only language in the charge addressing defenses. Appellant's sole defense was that the shooting was accidental and occurred when he was attempting to activate the laser. Providing the voluntary intoxication instruction, in the absence of supporting evidence, conveyed to the jury that Appellant was attempting to rely on intoxication as a defense or as the basis for his defense of accident, and effectively instructed the jury that neither was legally viable.

21

This inference seriously undermined Appellant's defense in light of the absence of an instruction addressing the defense of accident. The former penal code provided for a "defense of accident," under which "[n]o act done by accident is an offense," except for certain offenses satisfied by proof criminal negligence. *Rogers v. State*, 105 S.W.3d 630, 636 (Tex. Crim. App. 2003); TEX. PENAL CODE art. 39 (Vernon's 1925). This defense was applied to a range of situations, including voluntary conduct that resulted in an unintended or unexpected result. *Id.* at 637. In the current Code, the defense was replaced with section 6.01 (a), requiring a volitional act, and section 6.02 (a), requiring proof of a culpable mental state: intentionally, knowingly, recklessly, or with criminal negligence. *Id.* Accordingly, no instruction on the defense of "accident" is required because the function of the former defense is performed by the requirement of proof of the appropriate mental state. *Id.*; *Williams v. State*, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982). By instructing the jury that voluntary intoxication is not a defense, when the defense never elicited evidence or argued that intoxication was causal factor, the charge as a whole created a risk that the jury would conflate Appellant's defense of accident with the evidence of intoxication and find that the instruction foreclosed a finding that the shooting was accidental. The unwarranted instruction

amounted to a comment expressing an opinion on the validity of Appellant's defense.

Considering the state of the evidence, including the contested issues and weight of probative evidence, the State's case was not so compelling as to eliminate any possibility of harm. There was no evidence rationally supporting a motive that might lead Appellant to harm his friend, but there was ample evidence supporting Appellant's claim of accident. Holcomb himself consistently characterized the shooting as an accident, both to his family and to those providing medical treatment (3RR55, 136, 169; 5RR52, 55). Appellant also maintained that the shooting was accidental to witnesses immediately after the shooting (4RR234), to the police (6RR80, 89-90; SX35), and to his family (4RR54). The only witness who disagreed with this characterization was Appellant's son-in-law Schieffer. Schieffer testified that the shooting did not appear to be an accident, but his description of the shooting was incompatible with the physical evidence: the bullet's trajectory refuted Schieffer's testimony that Appellant held the gun in his left hand (4RR30-32; 5RR43, 72). Conviction was not certain in the absence of the erroneous instruction.

The State took advantage of the instruction by repeatedly mentioning Appellant's intoxication in relation to the shooting during closing arguments. The

23

State's argument asked the jury to "focus on" Appellant's intoxication (8RR18-19), and repeatedly questioned why "an intoxicated Dennis Redding" or a "drunk Dennis" felt the need to go get his gun (8RR20). These arguments were not provoked by any defense arguments.

In *Rodriguez v. State*, --- S.W.3d ----, 2014 WL 7205226 (Tex. App.-Houston [1st Dist.] 2014, no pet.) (No. 01-12-00688-CR), the charge in a murder prosecution improperly included an instruction based on section 46.035 of the Penal Code, which defines the offense of unlawful carrying of a handgun by a license holder. This instruction appeared within the self defense instruction, effectively making self defense contingent on whether the defendant violated section 46.035. *Id.* at *9. The court of appeals found that the defendant was harmed by the error because the defendant conceded that he shot the decedent and his claim of self defense was thus "the very basis of the case." *Id.* at *12. The charge conveyed to jury the defendant's failure to conceal a handgun, alone, would render his use of force unjustified. *Id.* The errors were not cured by other instructions or closing argument, the evidence on self defense was conflicting, closing argument highlighted the issues addressed in the erroneous instructions, and questions from the jury demonstrated that it focused on the erroneous instructions during deliberations. *Id.* at *15.

In *Mendoza v. State,* 349 S.W.3d 273 (Tex. App. – Dallas 2011, pet. ref'd), the trial court erred in submitting an instruction on provocation in a murder prosecution because there was no evidence that the defendant's acts actually caused the decedent to attack the defendant, a required element of provocation. *Id.* at 280. The court of appeals found the error harmful because the provocation instruction's presence in the jury charge implied that there was some evidence to support every element of the provocation doctrine when there was not. *Id.* at 282. Because the defendant admitted stabbing the decedent, his entire defense rested on the theory of self defense; thus, any erroneous instruction that limited his self-defense theory was likely to be harmful. *Id.* at 283.

Likewise, in the instant case, the unwarranted instruction undermined Appellant's defense of accident by suggesting that Appellant's defense was contingent on intoxication and thus not valid. Because the *Almanza* factors favor a finding of harm, reversal is required.

### E. The trial court erred in failing to submit the requested instruction explaining the application of section 8.04 (a).

The function of a jury charge is not "merely to avoid misleading or confusing the jury," but "to lead and to prevent confusion." *Hutch,* 922 S.W.2d at 170 (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)). The trial court's charge must fully instruct the jury on the law applicable to the case and

apply that law to the facts adduced at trial. *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); see TEX.CODE CRIM. PROC. ANN. art. 36.14 (West 2007).

The importance of an instruction explaining the application the abstract law to the facts cannot be overstated. The purpose of the jury charge is to instruct the jury on the law that applies to the case and to guide the jury in applying the law to the facts of the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Plata v. State*, 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *rev'd on other grounds*, *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997). But the application paragraph is the "heart and soul" of the jury charge. *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012). "The application paragraph is what explains to the jury, in concrete terms, how to apply the law to the facts of the case." *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013). "The jury must be instructed 'under what circumstances they should convict, or under what circumstances they should acquit.'" *Ex parte Chandler*, 719 S.W.2d 602, 606 (Tex. Crim. App. 1986). Jury charges which fail to apply the law to the facts adduced at trial are erroneous. *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004)

Section 8.04 of the Penal Code provides that "[v]oluntary intoxication is not a defense to the commission of a crime." TEX. PENAL CODE ANN. 8.04(a) (West 2011). The statute has been interpreted as barring the use of evidence of voluntary intoxication to negate, rebut, or disprove the culpable mental state of a crime. *Davis v. State*, 313 S.W.3d 317, 329-30 (Tex. Crim. App. 2010); *Ramos v. State*, 547 S.W.2d 33, 33–34 (Tex. Crim. App. 1977). But evidence of intoxication does not relieve the State of its burden of proving beyond a reasonable doubt the requisite mental state. *Raby v. State*, 970 S.W.2d 1, 5 (Tex. Crim. App. 1998). In *Raby,* the defendant asserted that a section 8.04 (a) instruction unconstitutionally shifted the burden on the element of criminal intent. *Id.* Rejecting this argument, the Court clarified that "the State is required to specifically prove, beyond a reasonable doubt, that a defendant intended to commit murder, regardless of any state of intoxication." *Id.* at 4-5.

The proper application of the provision is described in detail in *Sakil*, where the Court rejected the lower court's conclusion that the instruction created a mandatory presumption that an intoxicated person has the requisite mental state, relieving the State of its burden. The Court explained that the State's burden remains in place regardless of evidence of intoxication:

> If anything, a voluntary-intoxication instruction acts to reaffirm the mental-state requirements, not delete them.

27

> "[E]vidence of [an] appellant's intoxication, if any, does not negate the elements of intent or knowledge"; and, therefore, when the evidence suggests that a defendant acted under the influence of a substance, the instruction operates to inform the jury that the elements of the offense, including the requisite mental state, are not affected by any evidence of intoxication. In this case, the instruction prevented evidence of Appellant's possible intoxication from altering the jury's understanding of the crime with which he was charged: "intentionally, knowingly, or recklessly" causing "bodily injury to another."

*Sakil,* 287 S.W.3d at 28 (internal citations omitted). Accordingly, proper application of section 8.04 (a) requires the jury to understand that evidence of intoxication may not serve to negate the mental state elements, but the State must prove the requisite mental state beyond a reasonable doubt, regardless of evidence of intoxication. *Id.* Appellant's requested instruction was derived from *Sakil*'s articulation of the proper application of section 8.04 (a).

Simply instructing the jury that voluntary intoxication "does not constitute a defense to the commission of a crime" does not inform the jury of the interplay between evidence of intoxication and the State's burden on the requisite mental state. For this reason, the State Bar of Texas Committee on Pattern Jury Charges has included an explanatory application instruction in its criminal pattern jury charge:

> Voluntary intoxication is not a defense to the commission of a crime.
>
> But you are reminded that the state must prove all elements of the offense beyond a reasonable doubt.

*See* Comm. on Pattern Jury Charges, State Bar of Tex., Texas Criminal Pattern Jury Charges: Defenses § B6.3 (2013).

Although the *Sakil* opinion appears to validate an instruction tracking the language of the statute, this portion of the opinion is dicta. The court of appeals found that the instruction was not warranted by the evidence, and in its harm analysis the court opined that including the instruction in the absence of supporting evidence was harmful because served to lessen the State's burden of proof. *Sakil v. State*, 281 S.W.3d 87, 91 (Tex. App.- El Paso 2008). The Court of Criminal Appeals reversed in light of its finding that the evidence supported the inclusion of the instruction, and noted that it disagreed with the court of appeals' harm analysis regarding the effect of the instruction. 287 S.W.3d at 28. The issue presented here – denial of a requested instruction that accurately states the law and would assist the jury – was not before the Court.

Moreover, the *Sakil* Court's suggestion that the statutory language suffices to convey to the jury the proper application of the abstract law is wholly incongruous with its analysis. The Court's explanation of the application of the law

in relation to the State's burden on mental state necessitated an entire paragraph, and yet the Court suggests that a jury of laypersons will infer all of the content of its explanation by simply being informed that voluntary intoxication is "not a defense."

Typically, terms not legislatively defined are to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance. *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). But when words and phrases possess a technical or established legal meaning, or have acquired a peculiar and appropriate meaning in the law, the jury should be instructed as such. *Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003); *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000) (jury could not apply its own definition of "arrest" in escape prosecution); *Ruiz v. State*, 766 S.W.2d 324, 327 (Tex. App.- Houston [14th Dist.] 1989, no pet.) (trial court reversibly erred in failing to define "constructive transfer").

The phrase "not a defense to the commission of a crime" in section 8.04 (a) has acquired an established legal meaning, namely, that evidence of intoxication should not be considered as negating the requisite mental state, but that the State must prove that element beyond a reasonable doubt. For example, one court's section 8.04 (a) instruction explained its application by instructing that if the

30

defendant engaged in conduct "while intoxicated from the voluntary introduction of an intoxicating substance into his body, that intoxication, if any, cannot serve to negate whether his conduct was engaged in intentionally, knowingly, recklessly or with criminal negligence." *Scott v. State*, 2009 WL 416513 at *8 (Tex. App. – Austin 2009, no pet.) (not designated for publication). The additional language was necessary to explain to the jury how to apply the "not a defense" language.

Without an explanation of the proper application of the statutory language, the jury was free to apply any commonly used meaning to the phrase "not a defense to the commission of a crime." For example, one commonly understood definition of "defense" is "the case presented by or on behalf of the party being accused or sued in a lawsuit."[4] The jury could have applied this broad meaning and inferred that if a defendant was voluntarily intoxicated then he had no case in defense of the charges. A juror could also conclude that if a defendant was voluntarily intoxicated then all ensuing conduct is legally indefensible, regardless of the defendant's mental state, creating strict liability. In the absence of explanatory language, the voluntary intoxication instruction failed "to lead and to prevent confusion." *Hutch,* 922 S.W.2d at 170. The instruction given did not "explain to the jury, in concrete terms, how to apply the law to the facts of the case." *Yzaguirre,* 394 S.W.3d at 530. It did not instruct the jury "under what

_____
4 http://www.oxforddictionaries.com/us/definition/american_english/defense (December 23, 2014).

circumstances they should convict, or under what circumstances they should acquit." *Chandler*, 719 S.W.2d at 606.

In *Ruiz*, *supra,* the court of appeals reversed because trial court failed to define "constructive transfer" for the jury in a delivery prosecution. 766 S.W.2d 324, 327 (Tex. App.- Houston [14th Dist.] 1989, no pet.). Although the phrase was not defined by statute, it had acquired a technical legal meaning requiring the transferor to have direct or indirect control of the substance and knowledge of the transferee. *Id.* Accordingly, the court found that the phrase did not have a common and ordinary meaning that the jurors can be fairly presumed to know and apply, and the trial court erred in refusing to define it in the jury charge. *Id.* The error caused "some harm" because there was no evidence that the defendant had control of the cocaine and delivered it through a third person. *Id.*

The error in this case is even more pervasive because it implicated the legal validity of the entire defense case. The language "voluntary intoxication is not a defense to the commission of a crime" has acquired an established legal meaning, and is subject to misapplication if given a broad meaning used in common parlance. The statutory language does nothing to explain to the jury in concrete terms how evidence of voluntary intoxication impacts its evaluation of the State's case, and implies that there was no viable defense if Appellant was voluntarily

32

intoxicated at the time of the alleged offense. The trial court erred in failing to submit Appellant's requested instruction, or some portion thereof, explaining that the "not a defense" language did not negate the State's burden of proving each element of the offense beyond a reasonable doubt.

**F.** **The failure to submit an explanatory application instruction caused some degree of harm.**

Because Appellant preserved his complaint, the Court must reverse if the error resulted in any harm, regardless of degree. *Almanza*, 686 S.W.2d at 161; *Druery*, 225 S.W.3d at 504. The *Almanza* factors, set out above in Part A, favor a finding of harm.

With regard to the jury charge as a whole, the charge included an instruction stating that the State has the burden of proving each element beyond a reasonable doubt (CR68). But this instruction appeared several pages after the voluntary intoxication instruction, in the boilerplate section of the charge. The voluntary intoxication instruction immediately preceded the application paragraphs for murder, manslaughter, and deadly conduct (CR65-67), making it more likely that the jury was drawn to the voluntary intoxication instruction deciding whether to convict. *See Reeves v. State*, 420 S.W.3d 812, 819 (Tex. Crim. App. 2013) (physical location of erroneous instruction is a factor in evaluating harm).

Moreover, the boilerplate instruction on the State's burden of proof was not sufficient to explain the interplay between evidence of intoxication and the State's burden of proof. As discussed above, the jury was authorized to apply a broad interpretation of the term "defense" which would permit it to find that any conduct engaged in while intoxicated was legally indefensible, regardless of whether the defendant had the requisite mental state. Because the section 8.04 (a) instruction was the only instruction relating to defenses, and no instruction concerning "accident" was required, the charge as a whole created a risk that the jury would conflate Appellant's defense of accident with the evidence of intoxication and find that the instruction foreclosed a finding that the shooting was accidental. Moreover, the only way the jury could give effect to the defense of accident was through its evaluation of proof of the requisite mental state. In the absence of an instruction correctly informing the jury that the section 8.04 (a) instruction did not negate the State's burden to prove mental state, the jury could not give effect to the evidence that the shooting was accidental.

As argued in Part A, the State's case was not so compelling as to eliminate any possibility of harm. There was conflicting evidence regarding whether the shooting was accidental; conviction was not certain in the absence of the erroneous charge. The State took advantage of the instruction by repeatedly mentioning

34

Appellant's intoxication in relation to the shooting during closing arguments (8RR18-20).

Additionally, the State's voir dire implied that simply handling a gun while intoxicated is enough to create criminal responsibility for any ensuing conduct, unless "somebody drugged you against your will" (2RR47-50). In the context of explaining that intoxication was not a defense, the State questioned the panel about whether guns and alcohol "don't mix, period" or "you just shouldn't do it" and elicited agreement from numerous panel members. 2RR48-50.

In *Burd v. State*, 404 S.W.3d 64 (Tex.App.–Houston [1st Dist.] 2013, no pet.), the court of appeals found that the defendant was egregiously harmed by the omission of an instruction applying self defense to the lesser included offense of deadly conduct. *Id.* at 74-75. Because the outcome hinged on self defense and there was conflicting evidence on the issue, the failure to submit an instruction applying self defense to each of the offenses "vitally affected" the defensive theory, requiring reversal. *Id.* at 74.

In *Mendoza*, discussed above in Part A, the court of appeals found reversible error in the submission of a provocation instruction unsupported by the evidence. 349 S.W.3d 273, 282-83 (Tex. App. – Dallas 2011, pet. ref'd). In finding the error harmful, the court of appeals noted that the term "provoke" is a legal term of art,

requiring proof the defendant's conduct actually evoked a response from another. *Id.* at 283. The court recognized that the jury was likely to apply the common understanding of the term, to incite anger, and this erroneous interpretation of pivotal language in the court's instructions would necessarily preclude a jury from considering the statutory right of self defense. *Id.*

Similar harm is present here. The jury was authorized to apply the common understanding of the term "defense" to conclude that any conduct engaged in while intoxicated was legally indefensible, thus interfering with Appellant's claim of accident, the pivotal issue in the case. The Court should find that Appellant was harmed and reverse his conviction.

## Issue Three:  Jury Argument

### A.    Facts

The State argued in closing as follows:

> The issue for you, ladies and gentlemen, is has the State proven murder? Has the State proved intentionally or knowingly acts? What I want you to focus on are the acts.

Appellant objected:

> That's a misstatement of the law. It's intentionally or knowingly cause the result, not that he engaged in conduct.

The trial court overruled the objection. 8RR16-17.

36

Later the State argued:

> When you focus on the actions of the defendant in this case from walking up to that bedroom, rummaging around in the bag, taking the gun out of the holster, his gun, the gun he's familiar with, the retired police officer with the CHL, his gun and he pulls the trigger after taking several steps forward, those are all, ladies and gentlemen, intentional, knowing, those are purposeful actions.

The defense objected again:

> Your Honor, I object. The jury charge says the conduct that caused the result, not that he engaged in conduct. That's not part of the intentional and knowing. It's a misstatement of the law that applies to this case by saying if you find he engaged in conduct. That's not the law.

The trial court again overruled the objection. 8RR21-22.

## B.    Standard of Review

A court reviews *de novo* whether a party misstated the law during jury argument. *Thomas v. State*, 336 S.W.3d 703, 713 (Tex. App.-Houston [1st Dist.] 2010, pet. ref'd). Proper jury argument falls within one of the following categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) in response to argument of opposing counsel, and (4) plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010). When an argument exceeds the permissible bounds of the approved areas, it will not constitute reversible error

37

unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Todd v. State*, 598 S.W.2d 286, 296–97 (Tex. Crim. App. 1980).

## C.     The argument was improper because it misstated the law.

"The law provides for, and presumes, a fair trial free from improper argument by the State." *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)). Argument that misstates the law or is contrary to the jury charge is improper. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); *Burke v. State*, 652 S.W.2d 788, 790 (Tex. Crim. App. 1983).

There are three "conduct elements" that can be involved in an offense: (1) the nature of the conduct, (2) the result of the conduct, and (3) the circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03 (West 2011); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). In other words, some crimes are defined in terms of result and some are defined in terms of conduct or circumstances, and it is those "conduct elements" to which a culpable mental state applies. *McQueen* at 603. When an offense is specifically delineated as to the type of conduct, the trial court should limit the statutory definitions in the jury charge to

38

the culpable mental state required. *Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). Murder, whether intentionally or knowingly committed, is a result-oriented offense. *Cook v. State*, 884 S.W.2d 485, 490 (Tex. Crim. App. 1994). The applicable mental state relates to the result of the conduct only, i.e., causing of the death or serious bodily injury. *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003).

A person commits the offense of manslaughter "if he recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04. Manslaughter, like murder, is a result-oriented offense; the defendant's culpable mental state must relate to the result of his or her conduct. *Schroeder* at 399-400.

The jury charge properly reflected the result-oriented culpable mental states:

> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>
> A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

> A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

CR64-66; s*ee* TEX. PENAL CODE § 6.03(a) - (c) (Vernon 1994). When the State repeatedly argued that the issue before the jury was whether the State had proven intentional and knowing acts, it misstated the law and contradicted the jury charge. The misstatement arose in the context of the State arguing that evidence of the long-standing friendship and the closeness of the families was irrelevant, while Appellant's intentional and knowing actions in getting the gun and pulling the trigger were determinative of his guilt (8RR16-17). The argument erroneously conveyed that whether Appellant intended to harm Holcomb was irrelevant as long as his physical acts were intentional.

It is well recognized that the State and the accused are entitled to give reasonable explanations of the law. *Eckert v. State*, 672 S.W.2d 600, 603 (Tex. App. –Austin 1984, pet. ref'd). However, no party may make a statement of what purports to be the law, when the same is not contained in the court's charge. *Id.* Any argument that contains a statement of the law contrary to the court's charge is erroneous and is an improper argument. *Burke v. State*, 652 S.W.2d 788, 790 (Tex.

Crim. App. 1983). Error in the argument does not lie in going beyond the charge, but lies in stating the law contrary to the same. *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982).

**D.      The improper argument affected Appellant's substantial rights.**

Improper argument is subject to the harm standard for non-constitutional errors found in Texas Rule of Appellate Procedure 44.2(b). *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000). A substantial right is affected, requiring reversal pursuant to Rule 44.2(b), when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no influence or only a slight influence on the verdict, it is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). If it is unclear whether the error affected the outcome, the court should treat it as harmful. *Webb v. State*, 36 S.W.3d 164, 182 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).

Three factors govern the application of Rule 44.2(b) in a case involving improper argument:  (1) the severity of the State's misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the trial court); and (3)

the certainty of conviction absent the misconduct. *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

The magnitude of the misconduct was substantial because it was repeated. *Cf. Rudd v. State*, 921 S.W.2d 370, 372 (Tex. App.-Texarkana 1996, pet. ref'd) (stating that improper comment made briefly and only once was unlikely to have had any effect on jury); *Holmes v. State*, 962 S.W.2d 663, 675 (Tex. App.-Waco 1998, pet. ref'd, untimely filed) (holding harmless improper jury argument when State did not repeat it, and offered overwhelming evidence of defendant's guilt). Additionally, the improper argument bore directly on the sole contested issue – Appellant's intent at the time of the shooting.

There were additional arguments emphasizing the misstatement of law. The State argued:

> And, again, we don't have to prove to you why this happened. We just have to prove to you that this act occurred, ladies and gentlemen.

8RR20. Thereafter the State argued that if Appellant intentionally pulled the trigger he would be guilty:

> The actions that he took that night cannot be considered an accident. An accident would have been if [Appellant] was rifling through his bag and the gun just went off. That's an accident, ladies and gentlemen. An accident is he's got the gun in his hand and it falls to the ground, goes off and shoots Mark. That's an accident. Picking a

42

gun up out of a bag, taking it out of a holster, turning, saying, "I'm tired of you motherfuckers babying me again," walking towards Mark, putting your finger in the trigger and pulling it, *that is an intentional act*. That is no accident, and you-all know that is no accident. It doesn't matter what Mark says, it doesn't matter what Fran says. What matters is what he did, *the actions that he took.*

8RR52 (emphasis added). Again, this argument deflected the jury's attention from the proper mental state – whether Appellant intended to harm Holcomb – and shifted the focus to whether his physical actions were intentional. This undermined Appellant's defense that he accidentally fired the gun when he intended only to activate the laser.

The State also argued:

There are lessers for you to consider. *I submit to you that the State has proven beyond a reasonable doubt that the acts that Dennis Redding did that night were all intentional, all knowing acts.* Even if it only took 30 seconds and even if he felt bad the minute that trigger was pulled, he still murdered him. He still murdered him.

8RR56 (emphasis added). The argument again misstated the culpable mental state as applying to the nature of the conduct rather than its result.

Moreover, the State also injected the inapplicable mental state during voir dire. While defining manslaughter, the State explained that blowing a stop sign and hitting a child was a "reckless act," and then defined "reckless" in terms of the

"circumstances surrounding his conduct." Appellant objected that the State should confine its discussion to the definition applicable to the case, but the trial court overruled the objection after the State argued that it could present the full definition in voir dire. 2RR27-30. Because the issue was brought to the State's attention early in the proceedings, there can be no excusing the State's repeated misstatements in closing argument as inadvertent slip-ups. "Appellate courts must not hesitate to reverse a judgment when it appears a prosecutor has departed from one of these [four] areas in his argument and has engaged in conduct calculated to deny an accused a fair and impartial trial." *Dickson v. State*, 642 S.W.2d 185, 187 (Tex. App.–Houston [14th Dist.] 1982, pet. ref'd) (citing *Johnson v. State*, 604 S.W.2d 128 (Tex. Crim. App. 1980)).

Although Appellant was acquitted of murder, the improper argument could have contributed to his conviction for manslaughter. Manslaughter, like murder, is a result-oriented offense. It requires proof of conscious risk creation -- that the defendant was aware of but consciously disregarded a substantial and unjustifiable risk that death will result. *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975). By arguing that the jury should ignore evidence of Appellant's long-standing friendship with Holcomb and focus solely on his physical actions, the State diverted the jury's attention from its burden of proving the scienter

requirement with regard to the result of his conduct, whether reckless or intentional.

There were no curative instructions because the trial court denied all objections. A trial court puts its stamp of approval on the prosecutor's misstatement of the law when it overrules the defense's objection. *Burke*, 652 S.W.2d at 790; *Lee v. State*, 971 S.W.2d 130, 131 (Tex. App.- Houston [14th Dist.] 1998, pet. ref d).

Finally, conviction was not certain absent the misconduct. There was no evidence of any animosity between Appellant and Holcomb sufficient to incite violence, while there was ample evidence supporting Appellant's claim of accident. Holcomb himself consistently and repeatedly characterized the shooting as an accident (3RR55, 136, 169; 5RR52, 55), as did Appellant (4RR54, 234; 6RR80, 89-90; SX35). The only witness who disagreed with this characterization was Appellant's son-in-law Schieffer, who testified that the shooting did not appear to be an accident, but his description of the shooting was incompatible with physical evidence of the bullet's trajectory (4RR30-32; 5RR43, 72). The evidence against Appellant was not overwhelming. Accordingly, each of the three *Mosely* factors supports reversal.

In *Peak v. State*, 57 S.W.3d 14 (Tex. App. - Houston [14th Dist.] 2001, no pet.), the State repeatedly misstated the law in regard to the medical care defense at closing argument in prosecution for sexual assault of a child. The State incorrectly argued that the defendant could be convicted of sexual assault without proof that he acted "unlawfully," thus nullifying the statutory medical care defense. *Id.* at 18. Applying three *Mosley* factors, the court noted that the prosecutor engaged in serious misconduct by repeatedly misstating the law. *Id.* at 20. While the trial court sustained one objection, it overruled another and there were no curative instructions. *Id.* The State emphasized the improper by labeling the statutory defense as "absurd" and "ridiculous." *Id.* at 21. There was no certainty of conviction because evidence was disputed regarding the medical care defense. *Id.* In these circumstances, the court found that reversal was warranted. *Id.*

Likewise, the State's repeated misstatement of the law in the instant case bore directly on the defensive issue, Appellant's lack of intent; there were no curative instructions; and the evidence of guilt was not overwhelming. Because the error affected Appellant's substantial rights, reversal is required.

## PRAYER

Appellant respectfully requests that the Court reverse his conviction and remand the case for a new trial.

Respectfully submitted,

SCHNEIDER & MCKINNEY, P.C.

/s/ STANLEY G. SCHNEIDER
STANLEY G. SCHNEIDER
Texas Bar No. 17790500
440 Louisiana, Suite 800
Houston, Texas 77002
(713) 951-9994 (Office)
(713) 224-6008 (Fax)
stans3112@aol.com (Email)

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the attached and foregoing document has been served on the State by mailing and/or hand delivering a copy to the Galveston County District Attorney's Office at 600 59th Street, Suite 1001, Galveston, Texas 77551, on this 9th day of January, 2015.

/s/ STANLEY G. SCHNEIDER
STANLEY G. SCHNEIDER

**CERTIFICATE OF COMPLIANCE**

I certify that this document was prepared with Word Perfect X3, and that, according to that program's word-count function, the sections covered by TEX. R. APP. P. 9.4(i)(1) contain 10, 469 words.

/s/ STANLEY G. SCHNEIDER
STANLEY G. SCHNEIDER
