**Affirmed and Opinion filed February 7, 2013.**



In The

# Fourteenth Court of Appeals

NO. 14-11-01030-CR

**GINGER DEEANNA FISHER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Cause No. 08-DCR-048916A**

## O P I N I O N

Appellant Ginger DeeAnna Fisher challenges her conviction for aggravated assault of a peace officer on the grounds that (a) the evidence is insufficient to support the jury's rejection of her insanity defense and (b) the trial court reversibly erred by providing the jury with a definition of voluntary intoxication in the charge. We affirm.

# BACKGROUND

Appellant was indicted for aggravated assault of a peace officer,[1] and she asserted the affirmative defense of insanity. At her trial, the testimony and exhibits established the following.

Appellant and her boyfriend were at a bowling alley in Stafford, Texas, drinking beer and bowling. Appellant's boyfriend passed out, but then came to and became aggressive towards other bowling-alley patrons. The manager of the bowling alley called the police. Stafford Police Department Officers Kristi Hill and Leslie Claunch arrived and approached appellant's boyfriend. As they spoke to her boyfriend, appellant stood nearby. Appellant intervened when the officers instructed her boyfriend to put out a cigarette. She told the officers that her boyfriend could smoke and that they should leave him alone; appellant appeared angry. Officer Hill observed that appellant's speech was slurred when she confronted them about the cigarette.

Because Appellant's boyfriend continued to be aggressive, the officers restrained him by grabbing his arms and pushing him onto a table. The officers placed appellant's boyfriend in handcuffs and began dragging him out of the bowling alley when he refused to walk on his own. Appellant ran up behind the officers and her boyfriend with her right arm pulled back. One of the bowling-alley patrons shouted "knife," and the manager yelled to the officers to watch their backs. Before anyone could reach the officers, appellant stabbed Officer Claunch in her right side. The manager grabbed appellant and forced the knife out of her hand. Appellant was arrested and transported to the Stafford Police Department.

---

[1] Appellant was originally indicted for both attempted murder and aggravated assault of a peace officer. The attempted murder charges were dismissed by the State after appellant was convicted of the aggravated assault at issue in this appeal.

Officer Hill overheard appellant yell obscenities and shout that she "stabbed that bitch," when she walked by the holding cell appellant was detained in at the Stafford Police Department. Hill also testified about her own experience with individuals suffering from "mental health issues." She stated that she did not observe anything in appellant's behavior causing her to believe that appellant was suffering from any mental health problems on the night of the incident.

When Stafford Police Officer Christopher Koenig approached appellant to complete a booking form, he saw that appellant had smeared a pink substance, perhaps chewing gum, and wet toilet paper or paper towels on the window of the cell. He also observed her talking to herself in the back of the cell. When he asked appellant her age, she replied that she was "fifty-five."[2] In response to Koenig's request for her date of birth, appellant stated that she was born on "nine, nine, of 20010," and then said, "I guess I haven't been born yet." Officer Koenig asked appellant to be cooperative, and she responded, "[D]oes it look like I'm in a very cooperative matter [sic] since I stabbed that bitch cop?" Koenig explained that appellant appeared to understand his questions, but that she was being sarcastic in her answers. Koenig testified that he had had crisis intervention training and had dealt with mentally ill people. In his opinion, appellant's behavior was not consistent with a person having a "mental episode."

Stafford Police Officer Ryan Ward transported appellant to the Fort Bend County jail. Officer Ward testified that he could smell alcohol on her person and could tell that she had been drinking, but that she was not "falling over or anything." He recorded the conversations that occurred prior to and during the transport. Several excerpts from this audio recording were played for the jury. In these excerpts, appellant asked if she "got her really good," referring to "the

---

[2] The record reflects that appellant was born in 1983.

3

policewoman" she "stabbed." She also asked if she "hurt her." She stated that she was "aiming" for Officer Claunch's kidney when she "stuck her." In this recording, appellant said that her boyfriend did nothing wrong and that she did something wrong to protect him.

Ward also explained that he had had contact with or arrested people suffering from mental health issues or episodes in the past. He testified that he had undergone training to assist him in recognizing signs that a person is suffering from a mental health issue. He testified that, if he observes an individual who he believes shows signs of mental health issues, he contacts a local mental health facility to request a "screener" to determine if the individual is suffering from a "mental episode." Ward stated that, during his entire interaction with appellant on the evening of the incident, he never saw any sign that he needed to contact a screener to examine her.

At trial, appellant called Dr. Carmen Petzold to testify regarding her insanity defense. Dr. Petzold testified that appellant was competent to stand trial, but that she suffers from bipolar disorder, "a very severe mental illness." Petzold explained that appellant has an above average to superior range of intelligence. Dr. Petzold opined that, at the time appellant stabbed Officer Claunch, she was legally insane and that intoxication was not the cause of her insanity. Petzold stated that appellant did not know that stabbing Officer Claunch was wrong because

> her perception of what was happening was so distorted. Because of her severe mental illness, she could not tell that Officer Claunch was not harming [her boyfriend], and she could not tell that it was inappropriate behavior for her to stab somebody to keep them from — to keep an officer from harming someone else.

Dr. Petzold further explained that appellant believed that her boyfriend would kill her if she did not act to protect him from the officers.

4

Petzold identified several inconsistencies between appellant's perception of the incident and the other eyewitnesses' descriptions as indications that appellant was insane at the time of the stabbing. She stated, "Ultimately, I think [appellant] thought that anybody that she talked to would understand that she had to do this and that she would be validated for her actions and vindicated, because she was protecting somebody that should not have been hurt." Although Petzold acknowledged that appellant talked about her regular drinking habits during her interviews, Dr. Petzold stated that she ruled out intoxication as a cause of appellant's behavior. Petzold ruled out intoxication because there were no reports that appellant was intoxicated, the police were not called because of appellant's behavior, and appellant did not evidence slurred speech on the audio recording.

The State called Dr. Seth Silverman to rebut appellant's claim of insanity. Dr. Silverman testified that appellant was sane at the time she stabbed Officer Claunch. He testified that appellant "absolutely" knew the difference between right and wrong. He acknowledged that appellant suffers from a serious mental disease or defect—bipolar disorder—but that, in his opinion, she knew the difference between right or wrong. Silverman explained that appellant

> saw this as a logical act, that is, stabbing a police officer was a way that she could, first of all, not get beaten up by her friend for not acting, and also, it was a way that she could save him from being incarcerated. . . . So she deliberately behaved in a way, where there were more consequences, because she wanted to protect her boyfriend and protect herself. It's a very, very logical behavior. Now, you may not agree with it, and she knew it was wrong, according to other people, but that was her choice. People make choices all the time, and she knew this choice was illegal. . . .

A videotaped interview between Dr. Silverman and appellant was played for the jury. In the video, appellant explained that she had to hurt Officer Claunch because Claunch had hurt her boyfriend and that she was "trying to teach her a

5

lesson that you don't hurt defenseless people." In the video, she acknowledged that, after she stabbed Claunch, she waited for the officers to detain her. Appellant further stated that on the evening of the stabbing, she was "tipsy."

Dr. Silverman testified that appellant had discussed her drinking habits with him. He explained the nexus between insanity and intoxication as follows: "Well, if you are legally intoxicated, you can't be insane, because you're the one who's taking away your ability to make decisions." However, he stated that, for purposes of his evaluation of appellant relative to her insanity defense, he assumed that she was not intoxicated at the time of the offense.

The jury found appellant guilty of aggravated assault as charged in the indictment. After a punishment hearing, the jury sentenced her to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court entered judgment accordingly, and this appeal timely ensued.

## INSANITY DEFENSE

Appellant asserts that the jury improperly rejected her insanity defense, which she claims she proved by a preponderance of the evidence. She asserts that, because she was legally insane at the time she committed the offense, she lacked the necessary culpable mental state to support the conviction.

A defendant asserting an insanity defense must prove "that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." Tex. Penal Code§ 8.01(a). In the context of an insanity defense, the word "wrong" means illegal. *Ruffin v. State*, 270 S.W.3d 586, 592 (Tex. Crim. App. 2008). If a defendant knows that her conduct is "illegal"

6

according to society, then she understands her conduct is "wrong," even if, due to a mental disease or defect, she believes her conduct is morally justified. *See id.*

A defendant asserting the affirmative defense of insanity bears the burden of proof. *Meraz v. State*, 785 S.W.2d 146, 150 (Tex. Crim. App. 1990). To succeed on such a claim, the defendant must prove by a preponderance of the evidence that she was insane during the commission of the offense. Tex. Penal Code § 2.04; *Martinez v. State*, 867 S.W.2d 30, 33 (Tex. Crim. App. 1993). Where a defendant bears the burden of proof on an affirmative defense, the standard of review is whether, after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Meraz*, 785 S.W.2d at 155; *Bernard v. State*, —S.W.3d—, 2011 WL 1375570, at \*2 (Tex. App.—Houston [14th Dist.] April 12, 2011, pet. ref'd) (concluding, post-*Brooks*,[3] that *Meraz* standard of factual sufficiency applies to review of issues defendants must prove by a preponderance of evidence). Finally, when conflicting evidence on the issue of insanity is presented, we defer to the fact-finder's determinations regarding the weight and credibility of those decisions because the fact-finder has the benefit of observing the witnesses' actions and demeanor. *Lantrip v. State*, 336 S.W.3d 343, 348 (Tex. App.—Texarkana 2011, no pet.) (citing *Dashield v. State*, 110 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (en banc)).

Here, as discussed above, Officers Hill, Koenig, and Ward all testified that they had experience with individuals suffering from mental health problems. These officers did not believe that appellant had any mental health issues on the

---

[3] Judge Cochran, in her concurrence in *Brooks v. State*, 323 S.W.3d 893, 924 (Tex. Crim. App. 2010) (Cochran, J., concurring), notes that the civil standards of legal and factual sufficiency were properly adopted by the Texas Court of Criminal Appeals for "those few instances in criminal cases in which the burden of proof is a preponderance of the evidence," such as affirmative defenses.

evening of the incident. Moreover, in this case we are confronted with conflicting expert testimony on the issue of insanity: as discussed in more detail above, Dr. Petzold testified that appellant was insane at the time she committed the offense, and Dr. Silverman testified that appellant was not. We defer to the fact-finder's determinations when faced with such conflicting evidence. *See id.*

Finally, we note that appellant displayed awareness that her stabbing of Officer Claunch was illegal. She stated to both Dr. Petzold and Dr. Silverman that, after stabbing Claunch, she "waited" to be arrested. On the audio recording made at the Stafford Police Department and played for the jury, she acknowledged that she had done something "wrong." Thus, even though appellant may have believed she was somehow morally justified in stabbing Officer Claunch, the record clearly supports a finding that she also understood her conduct was wrong at the time that she committed this offense. *See Ruffin*, 270 S.W.3d at 592.

In sum, after considering all the evidence relevant to the issue at hand, the jury's rejection of appellant's insanity defense is not so against the great weight and preponderance of the evidence so as to be manifestly unjust. *Meraz*, 785 S.W.2d at 155. Accordingly, we overrule her first issue.

## VOLUNTARY INTOXICATION CHARGE

In issue two, appellant asserts that she was egregiously harmed by the trial court's inclusion of an instruction on voluntary intoxication in its charge to the jury.[4] A claim of jury-charge error is governed by the procedures set forth in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), *overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988). We must first determine whether the trial court erred in its submission

---

[4] Appellant did not object to the trial court's charge.

8

of the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If error exists and appellant properly objected at trial, reversal is required if "some harm" resulted, *i.e.*, if the error was "calculated to injure the rights of the defendant." *Id*. (quoting *Almanza*, 686 S.W.2d at 171). If appellant failed to object, error must be "fundamental," and reversal will result only if the error was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Id*. (quoting *Almanza*, 686 S.W.2d at 171).

Turning first to whether there was error in the charge, the court's instruction at issue here,[5] derived from Texas Penal Code section 8.04, provides:

> You are instructed that voluntary intoxication does not constitute a defense to the commission of a crime.
>
> You are further instructed that under our law neither intoxication nor temporary insanity of mind caused by intoxication shall constitute any defense to the commission of a crime.
>
> Evidence of temporary insanity caused by intoxication, if any, should be considered only in mitigation of the penalty, if any, attached to the offense.
>
> By the term "intoxication" as used herein is meant disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

Jury instructions are meant to lead a jury and prevent confusion. *See Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009). Such an instruction is appropriate if there is evidence from any source that might lead a jury to conclude that a defendant's intoxication somehow excused her actions. *Id.*

---

[5] The court's charge at punishment also contained a mitigation instruction regarding voluntary intoxication.

Here, we conclude that there was a clear possibility for juror confusion regarding whether appellant was intoxicated at the time of the offense and how intoxication might affect her culpability, based on the following evidence:

- The manager of the bowling alley testified that appellant and her boyfriend had consumed a pitcher and a half of beer the evening of the incident;

- Officer Hall testified that appellant seemed to slur her words when she attempted to intervene between Hall, Officer Claunch, and appellant's boyfriend;

- Officer Ward stated that he smelled alcohol on appellant;

- Dr. Petzold testified that appellant told her she and her boyfriend drank, on average, thirty beers a day between the two of them;

- Dr. Petzold stated that appellant told her she had consumed "maybe a beer and a half" before they had gone to the bowling alley and that she and her boyfriend "had drunk two pitchers of beer" at the bowling alley;

- Dr. Petzold stated that alcohol can affect bipolar disorder;

- Dr. Petzold opined that appellant was not intoxicated when the stabbing occurred because (1) the police were called based on her boyfriend's behavior, rather than hers, (2) none of the defense attorney's notes indicated that the witnesses reported appellant was intoxicated, and (3) Dr. Petzold did not hear any slurring in appellant's voice in an audio tape;

- On cross-examination, Dr. Petzold's opinion that appellant was not intoxicated was challenged by the State;

- Dr. Silverman also discussed appellant's alcohol use; and

- Appellant stated in her videotaped interview with Dr. Silverman that she was "tipsy" the night the stabbing occurred.

Although this evidence did not establish that appellant was intoxicated when she stabbed Officer Claunch, there was sufficient evidence from which a juror could

10

have improperly concluded that voluntary intoxication excused appellant's actions. *See id.* at 27. "By instructing the jury that voluntary intoxication does not constitute a defense to assault, the trial judge properly utilized the charge's function to actively prevent confusion." *Id.* at 28.

Under these circumstances, we conclude that the trial court did not err by including this instruction in its charge. Because there was no error, we need not pursue a harm analysis. *Id.* at 26. Accordingly, we overrule appellant's second issue.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/          Adele Hedges
                         Chief Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Publish — Tex. R. App. P. 47.2(b).