**Opinion issued April 20, 2017**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-16-00293-CR

———————————

## OSCAR MINJARE SANCHEZ, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 176th District Court
Harris County, Texas
Trial Court Case No. 1412036**

---

## MEMORANDUM OPINION

A jury convicted appellant, Oscar Minjare Sanchez, Jr., of the felony offense of failure to stop and render aid, and the trial court assessed his punishment at ten years' confinement, probated for ten years.[1] In two issues, appellant argues that:

---

[1]     *See* TEX. TRANSP. CODE ANN. § 550.021 (West Supp. 2016).

(1) the trial court erred in submitting a voluntary-intoxication instruction to the jury and (2) the evidence was insufficient to support his conviction because it failed to show that he had knowledge of the accident. We conclude that the evidence was sufficient to enable a reasonable factfinder to find beyond a reasonable doubt that appellant was intentionally or knowingly involved in an accident and failed to stop and render aid as required by Texas Transportation Code section 550.021 and that evidence regarding appellant's use of alcohol immediately prior to the offense was sufficient to justify the trial court's inclusion of an instruction on voluntary intoxication in the jury charge. Accordingly, we affirm.

## Background

Appellant was tried for the offense of failing to stop and render aid to complainant, Gaisile Goudeau, after an accident that occurred while Goudeau, a lieutenant with the Harris County Sheriff's Office (HCSO), was involved in an unrelated police pursuit. As the officers engaged in pursuit of the unrelated suspect, appellant was driving his Ford F-250 home from a night out with friends, including Richard Grassi, Grassi's fiancée, and two others.

Lieutenant Goudeau was the supervisor for the area where the police pursuit was occurring at approximately 2:00 a.m. on Sunday, August 11, 2013. She was driving her unmarked police car, a Chevy Impala, in the center lane of Highway

2

249, but she changed lanes into the rightmost lane when she saw a marked patrol car with flashing lights approaching from behind. She stated that after she was "already in the [right] lane" and had been driving there for several seconds, she felt a "violent hit" and heard a sound like a "loud crash." The impact caused her car to spin, propelling it over a curb and into a nearby parking lot. Goudeau then used her radio to call for help.

Sergeant K. Benoit was also following the chase vehicles, and he observed the accident. As he drove with his flashing lights activated, he observed a car, later identified as Goudeau's Impala, move over to the rightmost lane as he approached. He also noticed a Ford F-250 pickup truck traveling at a high rate of speed in the rightmost lane. Sergeant Benoit observed the speed at which the F-250 was moving and testified that "the first thing I thought when I passed him was, he was probably leaving Red River, which is that club. And had I not been in this pursuit trying to catch up with [a different suspect], I would have stopped [the driver of the truck], possibly on a DWI."

There were no other cars on that section of the roadway as Sergeant Benoit passed both vehicles. He continued to observe the vehicles in his rearview mirror, and he testified:

> I saw the truck coming up and, obviously, the truck realized he was too close to [the Impala] because the truck started to move over into the number two lane, center lane. However, I could see the impact where it hit the back of [the Impala]. The back of [the Impala] went

3

up in the air. The front went to the right, striking the curb, going over into the parking lot. . . .

Following the accident, Sergeant Benoit observed the F-250 move into the center lane and then return to the right lane and continue without stopping. Benoit briefly continued in his pursuit of the other suspect until he heard Lieutenant Goudeau radio for help and realized that she was the driver of the Impala that he had observed in the accident. He returned to the scene of the accident and saw that Goudeau had obvious injuries from the crash.

The driver of the F-250 did not return to the scene of the accident, nor did he contact 9-1-1. Goudeau was transported to the hospital, where she stayed for four days. She suffered severe injuries that required three surgeries and months of rehab.

HCSO Deputy A. Marines was assigned to investigate the case. Based on information obtained in HCSO's investigation, Deputy Marines drove to the Tomball Police Department to discuss the incident with Richard Grassi, who was also a captain in the TPD, and appellant. Grassi told Deputy Marines that he was in the car with appellant on the night of the incident. Appellant, Grassi, and three others went out together Saturday night. Appellant had driven Grassi and three others to different bars on Saturday night, and he was driving the group home, traveling along Highway 249, a little after 2:00 a.m. on Sunday morning. Grassi had used his cellphone to place calls to the TPD around the time of the crash—

4

between 2:18 and 2:23 a.m.—to alert them of the police chase that was headed toward the Tomball area. Both Grassi and appellant denied that appellant struck the Impala.

Appellant gave a written statement in which he stated that he had drunk two beers at the last bar that he and his friends had visited before driving home. Appellant stated that he was driving on Highway 249 when "a car shot out in front of me. I swerved to miss the car and drove to my residence." Appellant insisted that he did not hit the other car. At trial, appellant testified that he had agreed to be the designated driver that night. On the way home, the Impala pulled in front of him, and he hit the brakes and swerved into the middle lane to avoid the Impala. Evidence demonstrated that brake marks on the road were consistent with this statement. Appellant stated that, following this incident, he drove to his residence and had one of his friends drive his truck to take the rest of his friends home.

Appellant also allowed Deputy Marines to inspect his F-250, which matched Sergeant Benoit's description of the truck that had struck Goudeau's Impala. Deputy Marines found damage to the F-250's right front bumper, damage on the left tow ring, plastic embedded in one of the tires, and a scuffmark on the undercarriage of the right side of the vehicle's bumper. Deputy Marines found an indentation on the bumper of Goudeau's Impala that had a similar diameter to the damaged tow ring on appellant's F-250. Deputy Marines also found gray paint

5

matching the color of Goudeau's vehicle on the F-250's tow ring, samples of which Marines sent to be analyzed by the Department of Public Safety Crime Lab. The forensic scientist testified that some of the paint fragments taken from appellant's truck were consistent with the paint from Goudeau's Impala, although he also admitted that the paint could have come from Goudeau's car or any other vehicle with similar paint characteristics.

Deputy R. Musil, who investigated the scene of the accident, testified that the damage to Goudeau's Impala, which was extensive, was consistent with the Impala's having been hit by a large pickup truck and that the large pickup truck would not have shown signs of extensive damage. Deputy C. Meaux testified about the data from the Impala's airbag control module, which confirmed that the vehicle had been struck from behind. He stated that the evidence did not support a conclusion that Goudeau had cut the truck off.

The trial court charged the jury on failure to stop and render aid, and it included an instruction on voluntary intoxication that tracked the language of Penal Code section 8.04: "Voluntary intoxication does not constitute a defense to the crime. 'Intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." Appellant objected to the inclusion of this instruction, arguing that he had not raised intoxication as a defense to the charges against him. The State argued that appellant's trial strategy

involved challenging the knowledge element of the offense—that he did not know an accident had occurred—and "more than one witness" testified that appellant "had been drinking during the time when the crime occurred." The trial court overruled appellant's objection and included the instruction in the jury charge. The jury found appellant guilty, the trial court assessed his punishment at ten years' confinement, probated for ten years, and this appeal followed.

## Sufficiency of the Evidence

In his second issue, appellant argues that the evidence was insufficient to support his conviction for failure to stop and render aid, as required by Transportation Code section 550.021, because there was no evidence that he knew he had been involved in an accident.

### A. Standard of Review

In conducting a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). We defer to the factfinder to resolve conflicts, weigh the evidence, and draw reasonable inferences. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial

evidence alone can be sufficient to establish guilt. *Id.* The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

Transportation Code section 550.021 provides that a person commits an offense if he is the operator of a vehicle involved in an accident that results in injury to a person, and he does not immediately stop, "determine whether a person is involved in the accident, and if a person is involved in the accident, whether that person requires aid," and "remain at the scene of the accident until [he] complies with the requirements of Section 550.023." TEX. TRANSP. CODE ANN. § 550.021 (West Supp. 2016). Section 550.023 requires that, among other actions, the operator "provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation." *Id.* § 550.023 (West 2011).

Thus, under section 550.021, the State was required to prove that (1) appellant was the operator of a vehicle; (2) he was intentionally or knowingly involved in an accident; (3) the accident resulted in injury to Goudeau; (4) it was apparent that medical treatment was necessary; and (5) he failed to render

8

reasonable assistance. *See* TEX. TRANSP. CODE ANN. §§ 550.021, 550.023; *McCown v. State*, 192 S.W.3d 158, 162 (Tex. App.—Fort Worth 2006, pet. ref'd). The focus of this offense is that an accident occurred: "a culpable mental state must attach to this circumstance, i.e., whether an accident occurred." *Huffman v. State*, 267 S.W.3d 902, 908 (Tex. Crim. App. 2008); *McGuire v. State*, 493 S.W.3d 177, 205 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (holding that culpable mental state for failure to stop and render aid is that defendant "had knowledge of the circumstances surrounding his conduct, meaning the defendant had knowledge that an accident occurred"). Thus, the defendant's "failure to stop, return, or remain becomes criminal only because of his knowledge of circumstances surrounding the conduct: an accident and a victim suffering an injury." *Huffman*, 267 S.W.3d at 908; *McGuire*, 493 S.W.3d at 205.

The State has established the culpable mental state "if an objective examination of the facts shows that it would be apparent to a reasonable person that someone has been injured in an accident and is in need of reasonable assistance." *McGuire*, 493 S.W.3d at 205 (quoting *McCown*, 192 S.W.3d at 162–63 ("[C]onstructive knowledge of the resulting injury is sufficient.")). Evidence that appellant had positive, subjective knowledge is not required. *See McGuire*, 493 S.W.3d at 205; *see also McCown*, 192 S.W.3d at 162–63 (discussing public policy considerations behind applying objective standard to section 550.021).

9

Furthermore, "[i]ntent or knowledge may be inferred from the acts, words, and conduct of an accused at the time of an offense." *McGuire*, 493 S.W.3d at 205.

## B. Analysis

Appellant does not dispute that he was the operator of the F-250 on the morning of the accident or that he failed to render assistance to Goudeau; nor does he dispute the nature of Goudeau's injury or her need for treatment. *See* TEX. TRANSP. CODE ANN. §§ 550.021, 550.023; *McCown*, 192 S.W.3d at 162 (setting out elements of failure to stop and render aid). Rather, appellant argues that the evidence was insufficient to establish that he was intentionally or knowingly involved in an accident.

There was ample evidence to support the jury's determination that appellant had constructive knowledge of the accident. *See McGuire*, 493 S.W.3d at 205 (culpable mental state established when objective examination of facts shows that it would be apparent to reasonable person that someone has been injured in accident and is in need of reasonable assistance). Goudeau testified that after she was "already in the [right] lane" and had been driving there for several seconds, she felt a "violent hit" and heard a sound like a "loud crash." She further stated that the impact caused her car to spin, propelling it over a curb and into a nearby parking lot; and other evidence from the scene of the accident supported her testimony.

Sergeant Benoit testified that he saw the impact between appellant's F-250 and Goudeau's Impala in his rearview mirror. He stated that the force of the impact caused the back of the Impala to rise "up in the air," forcing the front of the car to the right and over the curb into a nearby parking lot. Appellant himself acknowledged seeing the Impala that night, testifying that it "shot out in front of [him]" and he "swerved to miss the car." This evidence of the circumstances surrounding the accident is sufficient to allow the jury to determine that a reasonable person would have been aware that an accident had occurred. *See Goar v. State*, 68 S.W.3d 269, 273 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("The testimony of witnesses other than appellant can establish appellant's knowledge of the circumstances surrounding his conduct.").

Appellant argues that the accident occurred "in the dead of night on a poorly lit stretch of highway," that he and Grassi "both gave consistent statements regarding the details of that night," that Goudeau herself testified that she did not know if appellant had perceived the accident, and that none of the State's witnesses "had personal knowledge as to whether he knew" an accident had occurred. However, the State was not required to prove that appellant had positive, subjective knowledge that an accident had occurred. *See McGuire*, 493 S.W.3d at 205 (holding that culpable mental state is established by objective facts showing that it would be apparent to reasonable person that someone had been injured in an

11

accident and was in need of reasonable assistance). Appellant also argues that the damage to his truck was minimal and that he cooperated fully with HCSO's investigation, further supporting his claim that he was not aware that an accident had occurred and undermining the State's case. But any conflicts in the evidence—such as appellant's cooperation with the investigation, his testimony that visibility was limited, his and Grassi's testimony that appellant did not strike the Impala, and the evidence of the degree of damage to his truck—were within the jury's province to weigh and to resolve. *See Hooper*, 214 S.W.3d at 13.

We overrule appellant's second issue.

## Jury Charge

In his first issue, appellant argues that the trial court erred in submitting a voluntary-intoxication instruction in the jury charge.

### A.    Standard of Review

Appellate review of claims of jury-charge error first involves a determination of whether the charge was erroneous and, if it was, an appellate court then conducts a harm analysis, with the standard of review for harm being dependent on whether error was preserved for appeal. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). A trial court is required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Gray v. State*, 152 S.W.3d 125, 127

(Tex. Crim. App. 2004). "The function of a jury charge is not merely to avoid misleading or confusing the jury, but to lead and to prevent confusion." *Sakil v. State*, 287 S.W.3d 23, 26 (Tex. Crim. App. 2009) (internal citations omitted).

An instruction on voluntary intoxication "is appropriate if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions." *Id.*; *see also Taylor v. State*, 885 S.W.2d 154, 158 (Tex. Crim. App. 1994) (holding that defendant need not rely upon intoxication as defense before trial court may instruct jury regarding voluntary intoxication). Furthermore, the evidence need not unequivocally establish that the defendant was intoxicated before such an instruction is proper. *Sakil*, 287 S.W.3d at 27. A voluntary-intoxication instruction may be appropriate "even when only 'slight' evidence suggested that a defendant's actions were precipitated" by intoxication. *Id.* at 27 n.10 (citing *Taylor*, 885 S.W.2d at 158).

**B.    Analysis**

The trial court's charge to the jury included an instruction on voluntary intoxication that tracked the language of Penal Code section 8.04: "Voluntary intoxication does not constitute a defense to the crime. 'Intoxication' means disturbance of mental or physical capacity resulting from the introduction of any substance into the body." *See* TEX. PENAL CODE ANN. § 8.04(a), (d) (West 2011).

13

The record contained evidence that appellant had been drinking on the night of the accident. Appellant and his friends had visited at least two bars the night of the accident, and appellant himself acknowledged that he had drunk two beers at the last bar he visited. The accident occurred shortly after 2:00 a.m. as appellant was driving home from a bar. Sergeant Benoit testified that, after observing appellant's F-250 pickup truck driving at a high rate of speed, his first thought was that the driver had just left a nearby club and that he might have pulled the driver over, "possibly on a DWI," if he had not already been involved in pursuing another suspect. And the defensive theory of the case rested primarily on appellant's assertion that he did not know that he had been in an accident.

We conclude that this evidence, raising the issue of appellant's possible intoxication, might have led a jury "to conclude that the defendant's intoxication somehow excused his actions." *See Sakil*, 287 S.W.3d at 26; *Hartwell v. State*, 476 S.W.3d 523, 539 (Tex. App.—Corpus Christi 2016, pet. ref'd) (holding intoxication instruction was warranted based on appellant's admission to drinking on night of incident and despite his statement that he was not "that impaired").

Appellant argues that the instruction was unwarranted because he never asserted intoxication as a defense, nor did he elicit any testimony regarding his intoxication or evidence of a causal link between his possible intoxication and his lack of knowledge about the accident. However, he need not have relied on

intoxication as a defense before the trial court was permitted to instruct the jury on voluntary intoxication. *See Taylor*, 885 S.W.2d at 158 (holding that intoxication instruction was warranted even though defendant had not relied on evidence of marijuana use to excuse her actions). Furthermore, the evidence need not establish unequivocally that appellant was intoxicated to justify the inclusion of a voluntary-intoxication instruction. *See Sakil*, 287 S.W.3d at 28 ("By instructing the jury that voluntary intoxication does not constitute a defense to assault, the trial judge properly utilized the charge's function to actively prevent confusion."); *Fisher v. State*, 397 S.W.3d 740, 746–47 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (instruction on voluntary intoxication appropriate where equivocal testimony might have led jury to conclude that voluntary intoxication excused appellant's actions). Thus, the inclusion of the instruction did not constitute error. *See Sakil*, 287 S.W.3d at 26–27.

Likewise, appellant's reliance on *Nethery v. State*, 692 S.W.2d 686 (Tex. Crim. App. 1985), is misplaced. In *Nethery*, the Court of Criminal Appeals held that the trial court did not err in failing to submit a charge instruction on the issue of insanity as a result of intoxication under Penal Code section 8.04 because the evidence did not raise the issue. *Id.* at 711. Here, the question is not whether appellant did not know his conduct was wrong or that he was incapable of conforming his conduct to the requirements of the law, but whether the jury might

have been confused by evidence of his potential intoxication into concluding that he could not form the requisite culpable mental state. *See id.*; *see also Sakil*, 287 S.W.3d at 26–28.

We overrule appellant's first issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).